IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JI'HADD HARRISON, | No. 4:24-CV-01559 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| BRADLEY BOOHER, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

APRIL 21, 2025

Plaintiff Ji'Hadd Harrison filed the instant *pro se* Section 1983[1] action, alleging constitutional violations by state officials at SCI Benner Township and the Pennsylvania Department of Corrections (DOC). The Court will dismiss Harrison's complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim for relief but will grant leave to amend.

I.   BACKGROUND

Harrison initially lodged her[2] complaint in September 2024.[3] Since that time, however, she has struggled to initiate her case by properly moving for leave to proceed *in forma pauperis* and submitting the statutorily mandated initial partial

---

[1]   42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).
[2]   Harrison prefers "she/her/hers" pronouns. *See* Doc. 1 ¶ 3; Doc. 19 at 1.
[3]   *See generally* Doc. 1.

filing fee.[4]  According to her most recent inmate trust fund account statement,[5] the initial partial filing fee has finally been deducted from her account by prison officials and mailed to the Court.[6]  Harrison's lawsuit is thus properly before the Court for screening under 28 U.S.C. § 1915A(a).

Harrison's complaint involves two unrelated issues regarding her incarceration at SCI Benner Township.[7]  First, Harrison alleges that on the evening of June 2, 2024, while on her way to "main yard," an unidentified corrections officer (or officers) intentionally closed a remotely operated steel gate on her, which Harrison describes as an attempt to "murder" her.[8]  The next day, she wrote a request to staff member (Form DC-135A) to Deputy Superintendent of Centralized Services (DSCS) Jennifer Rossman, describing the event and claiming that she had been "denied all medical treatment."[9]  On June 7, 2024, DSCS Rossman responded to this request, explaining to Harrison that she had been "seen by medical related to this [incident] on 06-03-2024" and that security had been notified of Harrison's allegations and her request for preservation of video evidence.[10]

---

[4]  *See, e.g.*, Docs. 3, 5, 6, 11, 12, 13, 14, 18-20, 22.
[5]  Doc. 22.
[6]  *See id.* at 1.
[7]  Harrison is currently incarcerated at SCI Phoenix.
[8]  Doc. 1 ¶¶ 11-12.
[9]  *See id.* ¶ 13; Doc. 1-1.
[10]  Doc. 1-1.

2

On June 3, 2024, one day after the gate-closure incident, Harrison filed a grievance on Form DC-804 Part 1 about being struck by the remotely operated gate on her way to yard.[11] Harrison appears to have handwritten on this form that it was an "abuse complaint," not a DC-ADM 804 grievance, and asking that it be forwarded to security.[12]

Notwithstanding Harrison's handwritten note, the grievance was given an official number (1091285) and formally responded to by Facility Grievance Coordinator "Jaqueline" Burd.[13] Burd rejected the grievance on procedural grounds. She explained that Harrison was currently on "grievance restriction," meaning that she had filed multiple frivolous grievances in a short amount of time and was therefore "limited to one grievance every 15 working days."[14] Furthermore, Harrison had last submitted a grievance (number 1091281) on June 4, 2024, meaning that she could not submit another grievance until June 25, 2024.[15] Burd noted, however, that Harrison's allegation of abuse had been forwarded to the Security Office for investigation.[16]

---

[11] Doc. 1 ¶ 14; Doc. 1-3.
[12] *See* Doc. 1-3.
[13] *See id.*; Doc. 1-4; Doc. 1 ¶ 6 (providing first name of Facility Grievance Coordinator).
[14] Doc. 1-4; *see also* COMMONWEALTH OF PA., DEP'T OF CORR., INMATE GRIEVANCE SYS., Policy No. DC-ADM 804 § 3(A)(1)(c) (May 1, 2015) [hereinafter "DC-ADM 804"], https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/804%20Inmate%20Grievances.pdf (last visited Apr. 15, 2025).
[15] *See* Doc. 1-4; DC-ADM 804 § 3(A)(1)(c).
[16] *See* Doc. 1-4.

On June 25, 2024, Harrison appealed to the Facility Manager, Superintendent Bradley Booher,[17] complaining that she had not been given adequate treatment for her back pain or been interviewed about the gate-closure incident.[18] Superintendent Booher upheld Facility Grievance Coordinator Burd's rejection, similarly explaining that Harrison was on grievance restriction and could not appeal a grievance that had not been properly submitted under the time constraints of the grievance restriction process.[19] Superintendent Booher further noted that Harrison's allegations had been forwarded to the Security Office and that "Security is investigat[ing] and aware of" her situation.[20]

Undeterred, Harrison appealed to final review with the Secretary's Office of Inmate Grievances and Appeals (SOIGA).[21] Keri Moore, signing for the SOIGA's Chief Grievance Officer, likewise dismissed the appeal because Harrison was on grievance restriction and had never properly filed an initial grievance within the parameters of the grievance-restriction process.[22] Moore also noted that Harrison's gate-closure allegations were being investigated.[23] It does not appear that Harrison ever properly filed a grievance related to the gate-closure incident.

---

[17] *See* Doc. 1 ¶¶ 4, 15-16.
[18] *See* Doc. 1-5.
[19] *See* Doc. 1-7.
[20] *Id.*
[21] *See* Doc. 1-8.
[22] *See* Doc. 1-9.
[23] *Id.*

4

The second issue Harrison raises in her complaint[24] involves the Prison Rape Elimination Act of 2003 (PREA).[25] Harrison appears to allege that unnamed SCI Benner Township officials violated PREA standards and regulations, although her complaint does not assert what those violations entail. From the attachments to her complaint, it appears that Harrison believes that she was improperly denied the opportunity to shower separately and was upset that she was being housed in a single cell rather than celled with another transgender or intersex inmate, which was her preference.[26] In grievance number 1100696, Harrison requested as relief "to be given [an] LGBTQ+ celly" and "all [her] PREA rights," as well as "monetary relief for being denied LGBTQ+ rights and federal laws [sic]."[27]

This grievance, too, was rejected on procedural grounds. The Facility Grievance Coordinator (again "J. Burd") noted that Harrison had failed to provide a date for the alleged PREA violations.[28] Harrison does not state whether she refiled a corrected grievance for the purported PREA issues.

Harrison sues five defendants: Superintendent Bradley Booher, SOIGA official Keri Moore, Facility Grievance Coordinator "Jaqueline" Burd, DSCS Jennifer Rossman, and C.C.P.M./PREA Coordinator Michelle Dunn.[29] Harrison

---

[24] *See* Doc. 1 ¶¶ 19-21.
[25] 34 U.S.C. § 30301 *et seq.*
[26] *See* Doc. 1-10.
[27] *Id.*
[28] *See* Doc. 1-11.
[29] Doc. 1 ¶¶ 4-8.

appears to assert Section 1983 claims of Eighth Amendment deliberate indifference to serious medical needs, violation of the First Amendment's Petition Clause, and infringement of the Fourteenth Amendment's Equal Protection Clause.[30] Harrison, however, fails to state a claim upon which relief may be granted, so the Court will dismiss her complaint.

## II.    STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[31] One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"[32] This language closely tracks Federal Rule of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[33]

---

[30] *See id.* ¶¶ 26-30. Harrison also uses several constitutional tort buzzwords like "retaliation" and "due process." *See id.* ¶ 27. However, none of the allegations in her complaint implicate a First Amendment retaliation claim or a Fourteenth Amendment procedural due process claim, so the Court will dismiss these cursory assertions as mere legal conclusions. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citation omitted). Harrison may also be attempting to bring a Section 1983 claim under the Eighth Amendment against the officer or officers who allegedly struck her with the steel gate. *See* Doc. 1 ¶ 29. Harrison does not identify, name, or otherwise sue any such officer, so these Eighth Amendment allegations will likewise be summarily dismissed.

[31] *See* 28 U.S.C. § 1915A(a).

[32] *Id.* § 1915A(b)(1).

[33] *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[34] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[35] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[36]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[37] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[38] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[39] Finally, the court must review the presumed-truthful allegations

---

[34] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[35] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[36] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[37] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[38] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[39] *Id.* (quoting *Iqbal*, 556 U.S. at 679).

"and then determine whether they plausibly give rise to an entitlement to relief."[40] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[41]

Because Harrison proceeds *pro se*, her pleadings are to be liberally construed and her complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[42] This is particularly true when the *pro se* litigant, like Harrison, is incarcerated.[43]

## III. DISCUSSION

Upon review of Harrison's complaint, it is clear that she fails to state a claim upon which relief may be granted. The Court will address Harrison's numerous pleading deficiencies in turn.

### A. Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[44] Rather, a Section 1983 plaintiff must aver facts that demonstrate "the defendants' personal involvement in the alleged misconduct."[45] Personal involvement can include direct

---

[40] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[41] *Iqbal*, 556 U.S. at 681.
[42] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).
[43] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).
[44] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).
[45] *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).

wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[46] Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability.[47]

Harrison's first pleading deficiency is her failure to allege personal involvement for each Defendant. Although she names five Defendants and discusses some of their conduct, she does not include any specific allegations of *wrongdoing* that would establish personal involvement by any Defendant in a constitutional violation.

Initially, the only involvement Harrison pleads for Superintendent Booher, Facility Grievance Coordinator Burd, and SOIGA official Moore concerns the review and dismissal of Harrison's improperly filed grievances and appeals. But, as noted above, a state official's involvement in the grievance process by itself does not plausibly state personal involvement in a constitutional violation.

---

[46]  *Id.* (quoting *Rode*, 845 F.2d at 1207).
[47]  *See id.* (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

As to DSCS Rossman, Harrison merely alleges that she sent an informal request to Rossman and Rossman promptly responded to that request, noting that Harrison had been treated by medical the day after the event, security had been informed of the gate-closure incident, and that video footage from the incident had been preserved. In no way does this single allegation plausibly assert personal involvement in a constitutional violation by Rossman.

As to C.C.P.M./PREA Coordinator Dunn, Harrison similarly alleges only that Dunn responded to Harrison's informal request to staff by explaining that Harrison had filed a grievance about the PREA issues and would receive a response in due course.[48] Again, this single allegation does not implicate personal involvement in constitutional misconduct by Dunn.

To plausibly state a Section 1983 claim, Harrison must specify each Defendant's personal involvement in the alleged constitutional violation. She has not done so for any Defendant. Accordingly, the Court must dismiss the Section 1983 claims against all Defendants pursuant to 28 U.S.C. § 1915A(b)(1) for lack of personal involvement.

### B. Eighth Amendment Medical Indifference

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has

---

[48] *See* Doc. 1 ¶ 21; Doc. 1-12.

incarcerated."[49]  To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly allege that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff."[50]  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[51]

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in suffering or risk of injury.[52]  Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain."[53]  Claims sounding in mere medical negligence will not suffice.[54]

Harrison does not plausibly allege an Eighth Amendment medical indifference claim against any Defendant.  Initially, it is questionable whether

---

[49]  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).
[50]  *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023) (citation omitted); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).
[51]  *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).
[52]  *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).
[53]  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).
[54]  *Rouse*, 182 F.3d at 197.

11

Harrison's allegations constitute a "serious" medical need. From her complaint, it appears that she is claiming that the gate-closure incident caused "extreme back pain."[55] She does not allege any diagnosis or specific treatment. Assuming such minimal allegations are sufficient to state a serious medical need, Harrison has not alleged deliberate indifference or causation with respect to any Defendant.

First, Harrison does not allege personal involvement for any Defendant, so she obviously has not plausibly alleged deliberate indifference to a serious medical need. Notably, *none* of the named Defendants is a medical provider at SCI Benner Township, and it appears that Harrison was being treated by medical staff at the relevant times.[56] Moreover, Harrison has not alleged that she submitted sick-call requests or sought treatment with prison medical providers and was denied treatment; rather, she simply asserts that she filed a grievance (without adhering to DOC policy) and that this grievance and its appeals were summarily dismissed on procedural grounds. These allegations are woefully insufficient to state a constitutional violation with respect to prison medical care.

Second, Harrison has not plausibly alleged that any Defendant's conduct caused her harm. Again, while her complaint indicates that she filed a grievance

---

[55] Doc. 1 ¶ 15.
[56] *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (noting that nonmedical prison officials are not "chargeable with the Eighth Amendment scienter requirement of deliberate indifference" unless they have a reason to believe (or actual knowledge) that prison doctors or other medical staff are mistreating or not treating a prisoner).

and appeals about the gate-closure incident, she has not explained how high-level prison officials (most of whom were involved only in the grievance process) were responsible for her medical care or that she had sought treatment through prison physicians or nursing staff and that this treatment was delayed or denied.

In sum, while the gravamen of Harrison's first claim asserts deficient medical care, she has not plausibly alleged such an Eighth Amendment claim against any named Defendant. Harrison's failure to allege the elements of a medical indifference claim is an additional reason for dismissal under Section 1915A(b)(1).

C.   **First Amendment Petition Clause Claim**

Harrison's complaint may be liberally construed as raising a claim under the Petition Clause of the First Amendment. She broadly asserts that her grievance was rejected "due to grievance restriction," and that this denial of access to the grievance process allegedly "violates" the First Amendment.[57]

Although it is true that inmates have a First Amendment right to seek redress of grievances as part of their right of access to courts,[58] there is no concomitant First Amendment right to receive a response to a grievance or complaint.[59] To the

---

[57] Doc. 1 ¶ 28.
[58] *See Mack v. Warden Loretto FCI*, 839 F.3d 286, 297-99 (3d Cir. 2016).
[59] *See Kerchner v. Obama*, 612 F.3d 204, 209 (3d Cir. 2010); *Booth v. King*, 346 F. Supp. 2d 751, 761 (E.D. Pa. 2004) ("[A]lthough prisoners have a constitutional right to seek redress of grievances as part of their right of access to courts, this right is not compromised by the failure of prison officials to address these grievances."); *see also Am. Bus Ass'n v. Rogoff*, 649 F.3d

extent that Harrison is asserting that her First Amendment rights were infringed by being placed on grievance restriction, she is incorrect. Under Section 3 of DC-ADM 804, inmates who file five frivolous grievances within a 30-day period may be placed on grievance restriction, which limits those inmates to filing "no more than one grievance every 15 working days."[60] Thus, inmates on grievance restriction are not barred from petitioning prison officials for redress, they simply are limited in the number of grievances they can file due to their prior abuse of the grievance system. Accordingly, Harrison's assertion that being placed on grievance restriction violated her First Amendment rights is both legally frivolous and insufficient to state a claim for relief and must be dismissed under Section 1915A(b)(1) as well.

### D. Fourteenth Amendment Equal Protection

It is unclear which Defendant or Defendants Harrison believes violated the Equal Protection Clause of the Fourteenth Amendment with respect to the PREA-based allegations. Although Harrison perfunctorily states that "all defendants" violated her equal protection rights,[61] her allegations do not substantiate this broad assertion. In fact, it appears that only C.C.P.M./PREA Coordinator Dunn had any

---

734, 739 (D.C. Cir. 2011) ("Far from holding that the Petition Clause requires the possibility of a remedy, . . . the clause does not even guarantee[] a citizen's right to receive a government *response* to or official *consideration* of a petition for redress of grievances." (citation and internal quotation marks omitted)).

[60] *See* DC-ADM 804 § 3(A)(1)(c).
[61] *See* Doc. 1 ¶¶ 27, 28, 30.

involvement in this claim (beyond those officials who handled grievance number 1100696). Nevertheless, Harrison has not stated an equal protection cause of action as to any Defendant, so the Court need not try to ascertain against whom Harrison is asserting this claim.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."[62] To state a Fourteenth Amendment equal protection claim, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class[.]"[63] An equal protection claim can also be asserted under a "class of one" theory, whereby a plaintiff alleges that a state actor intentionally treated him differently than others who are similarly situated "and there is no rational basis for the difference in treatment."[64]

While Harrison invokes the phrase "equal protection," she does not plausibly allege any of the elements of such a claim. Harrison does not aver that she was treated differently than other similarly situated inmates. She does not even discuss any other inmates. Harrison also does not allege that she belongs to a protected

---

[62] U.S. CONST. amend. XIV, § 1.
[63] *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016).
[64] *Phillips*, 515 F.3d at 243 (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

class,[65] or that the "discrimination" against her was the intentional result of her membership in that class. In fact, Harrison does not plead any allegations that could qualify as "discrimination," *i.e.*, being treated differently than other inmates, much less the type of invidious discrimination that is required for an equal protection claim.[66] Without alleging any of these fundamental elements, Harrison has failed to state an equal protection claim.

### E.    Motion for Preliminary Injunction

Harrison also filed a motion for a preliminary injunction and temporary restraining order.[67] That motion will be denied.

First, Harrison does not properly support her motion with appropriate argument or citation to case law addressing the relevant factors for review when seeking a preliminary injunction.[68] Second, because Harrison's complaint is being dismissed under Section 1915A(b)(1), it follows that she has not demonstrated a likelihood of success on the merits, one of the two critical "gateway" factors for preliminary injunctive relief.[69] Finally, in her motion, Harrison asserts that prison officials at SCI Somerset are failing to follow PREA standards.[70] However,

---

[65]    Harrison never expressly states that she is transgender, male or female, intersex, gay, nonbinary, or any other particular identity or class membership.
[66]    *See Parham v. Hughes*, 441 U.S. 347, 351-52 (1979) (requiring discrimination to be "invidious" before equal protection challenge can be asserted in response to state action).
[67]    Doc. 15.
[68]    *See Reilly v. City of Harrisburg*, 858 F.3d 173, 176, 179 (3d Cir. 2017).
[69]    *See id.* at 179.
[70]    *See* Doc. 16 at 1.

Harrison is no longer incarcerated at SCI Somerset and thus her claims for injunctive relief are likely moot.[71] Additionally, Harrison has not sued any SCI Somerset officials in this lawsuit, so her claims for preliminary equitable relief are untethered to her lawsuit and thus improper.[72] For all the foregoing reasons, Harrison's motion for a preliminary injunction and temporary restraining order will be denied.

### F.  Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[73] Harrison will be granted limited leave to amend that will extend only to her Eighth Amendment claims. Harrison's First Amendment Petition Clause claim will be dismissed with prejudice, as granting leave to amend that claim would be futile.

Additionally, while dismissal of Harrison's PREA-based equal protection claim is without prejudice, leave to amend that claim in the instant civil action will be denied. Harrison is essentially attempting to bring multiple, unrelated lawsuits

---

[71] *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims."); *see also Abdul-Akbar v. Watson*, 4 F.3d 195, 197 (3d Cir. 1993).

[72] When seeking a preliminary injunction, there must be "a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Ball v. Famiglio*, 396 F. App'x 836, 837-38 (3d Cir. 2010) (nonprecedential) (quoting *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010)).

[73] *Grayson*, 293 F.3d at 114.

against different defendants in a single complaint. That is, Harrison's Eighth Amendment claims regarding the gate-closure injury and ensuing medical care (or alleged lack thereof) are completely unrelated to her PREA-based Fourteenth Amendment equal protection allegations, and the claims target different Defendants.[74]

Stated differently, the allegations that make up Harrison's Eighth Amendment claims—which target DSCS Rossman and improperly include grievance officers—are not part of the "same transaction, occurrence, or series of transactions or occurrences" underlying the Equal Protection claim against C.C.P.M./PREA Coordinator Dunn (and improperly targeted grievance officers). And because there is no "question of law or fact common to all defendants" such that these claims and defendants could be permissively joined together in this action, Harrison cannot file an amended complaint in this case that combines these disparate claims.[75]

Harrison is, however, free to file an additional lawsuit based on these unrelated PREA allegations, although the Court notes that—if filed in federal court—Harrison would be required to pay the filing fee for the additional case.[76]

---

[74] Although Harrison attempts to assert that each of her Section 1983 claims targets "all defendants," that assertion is belied by her allegations, as noted in detail above.
[75] *See* FED. R. CIV. P. 20(a)(2)(B).
[76] *See id.*; *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (explaining that "[u]nrelated claims against different defendants belong in different suits" not only to prevent confusion but also to

Furthermore, Harrison would have to allege sufficient facts that would plausibly state an equal protection claim against an appropriate state official, as she has not done so in her original complaint.

If Harrison chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings. The amended complaint should set forth Harrison's Eighth Amendment claim(s) in short, concise, and plain statements, and in sequentially numbered paragraphs. Harrison must leave one-inch margins on all four sides of her pleading.[77] She must also name proper defendants and *specify* the offending actions or omissions by each defendant. This step is particularly critical for Harrison, as her initial complaint is devoid of allegations that demonstrate each Defendant's personal involvement in the purportedly unconstitutional conduct. Harrison must also sign the amended complaint and indicate the nature of the relief sought.

If Harrison does not timely file an amended complaint, dismissal of her Eighth Amendment claims without prejudice will automatically convert to dismissal with prejudice and the Court will close this case.

---

ensure that prisoners pay the required filing fees under the PLRA); *Redding v. Bilinski*, No. 3:15-cv-1047, 2015 WL 3710842, at *1-2 (M.D. Pa. June 12, 2015) (same).

[77] *See* LOCAL RULE OF COURT 5.1

## IV. CONCLUSION

Based on the foregoing, the Court will dismiss Harrison's complaint pursuant to 28 U.S.C. § 1915A(b)(1) because she fails to state a claim upon which relief may be granted. Harrison may file an amended complaint in accordance with this Memorandum. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge